UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ATLAS IP, LLC | ) | |
| A Florida Corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:15-cv-10746 |
| | ) | Hon. Milton I. Shadur |
| COMMONWEALTH EDISON CO., | ) | |
| An Illinois Corporation, | ) | JURY DEMANDED |
| | ) | |
| Defendants. | ) | |

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS SECOND AMENDED COMPLAINT

## I.    INTRODUCTION

On March 24, 2016, Atlas filed a Second Amended Complaint that included a detailed

claim chart mapping the limitations of claim 1 of the '734 patent to Defendant's accused smart

meters.  *See* ECF Docket No. 25 and 25-2.  Despite these additional factual allegations,

Defendant again argues that the Second Amended Complaint is deficient with respect to the

"frame" and "powering off" limitations.  In so arguing, however, Defendant focuses on certain

portions of the Second Amended Complaint and accompanying claim chart in isolation while

ignoring other portions, or otherwise confuses the allegations contained therein.  Looking past

these tenuous arguments, the Second Amended Complaint contains sufficient factual allegations

to state a claim of relief that is plausible on its face, and therefore Defendant's motion should be

denied.

## II.    DISCUSSION

### A.    The Controlling Pleading Standard

Plaintiff does not dispute that the pleading standard as articulated in *Twombly* and *Iqbal*

should control in this patent infringement case. Thus, a complaint will survive a motion to dismiss if it contains sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (*citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). While there is a dearth of caselaw applying this standard to patent infringement claims, Plaintiff drafted the Second Amended Complaint and corresponding claim chart with this pleading standard in mind.

### B. The Second Amended Complaint's Allegations Are Sufficient

Defendant argues that the Second Amended Complaint, which includes the claim chart attached thereto, is deficient in three ways: 1) it does not speak to the requirement for the "frame limitation" to "also establish[] the predetermined intervals during the outbound and inbound portions of the communication cycle when each remote is allowed to transmit and receive"; 2) it does not mention what information the remotes use to power down the receivers; and 3) it alleges that the accused smart meters power down their receivers during transmission, but it contains no allegations about whether the receiver is powered down at other times. These purported deficiencies can be broken into two categories: 1) the "frame" limitation and 2) the "powering off" limitation.

### 1. The "Frame" Limitation

Atlas's Second Amended Complaint incorporates a claim chart that provides, among other things, additional factual allegations directed to the "frame" limitation as follows:

| | | |
|---|---|---|
| the hub transmitting a frame containing the cycle establishing information which establishes both an outbound portion of the communication cycle when the hub transmits frames to the remotes and an inbound portion of the | A "frame" is "an ordered group of bits." '734 Patent at 1:41-43.<br><br>A "communication cycle" is "a series of intervals for outbound and inbound communications." '734 Patent | The read request and power status check request messages are "an ordered group of bits," *i.e.*, they are *frames*. As explained above, these message [*frames*] contain information establishing the communication cycle, |

| communication cycle when the remotes transmit frames to the hub, the frame containing the cycle establishing information also establishing the predetermined intervals during the outbound and inbound portions of the communication cycle when each remote is allowed to transmit and receive; | at 5:44-58, 7:12-18, 11:38-55, 13:12-36, 27:54-28:64, 32:19-22, 33:8-27, 37:32-38:33, Figs. 3, 10-11, 18-19. | including the ***interval*** in which a read request or power status check request messages is sent from the access point [***hub***] to the smart meter [***remote***] [***the outbound portion of the communication cycle***], and the ***interval*** in which a read message or power status message is sent from the smart meter [***remote***] to the access point [***hub***] [***the inbound portion of the communication cycle***] |
|---|---|---|

ECF Docket No. 25-2 at 4.

Despite this, Defendant argues that the Second Amended Complaint does not speak to the requirement for the frame limitation to "also establish[] the predetermined intervals during the outbound and inbound portions of the communication cycle when each remote is allowed to transmit and receive."  ECF Docket No. 28-1 at 4.  This apparently presupposes that "the predetermined intervals during the outbound and inbound portions of the communication cycle when each remote is allowed to transmit and receive" must be different than "the predeterminable intervals during each communication cycle, the intervals being ones . . . when the remotes are allowed to transmit frames to the hub."  While there ***could*** be a distinction between these limitations, there are also instances when the two limitations are coextensive.



Considering Figure 3 from the '734 patent, there is an inbound portion (element 74) comprised of transmission opportunities Txop 1-n (elements 84). '734 Patent, col. 12, lines 14-19. "The Txop 84, simply is a position in the order of other remotes 66 which have requested Txops 84 to transmit to the hub 64." *Id.*, col. 12, lines 19-21. The preamble of claim 1 of the '734 patent requires "[a] communicator for wirelessly transmitting frames to and receiving frames from *at least one* additional communicator." *Id.*, col. 44, lines 63-65 (emphasis added). The plain language of the preamble dictates that there need only be one additional communicator,

or there may be more than one. When there is only one additional communicator, such as with the accused instrumentalities, the Txop 84 assigned to that communicator would be coextensive with the inbound portion of the communication cycle 74 as there would be no other Txops in the inbound portion.

In any event, Defendant's real complaint turns on the proper construction of this limitation, which is not appropriate at the motion to dismiss stage. *See, e.g., Fujitsu Ltd. v. Belkin Int'l, Inc.*, 782 F. Supp. 2d 868, 890 (N.D. Cal. 2011) ("Claim construction and infringement analysis should not be resolved on a motion to dismiss"). The instant motion, being essentially a claim construction challenge, should be denied.

### 2.     The "Powering Off" Limitation

With respect to the "powering off" limitation, Atlas's Second Amended Complaint included a claim chart specifically alleging that "[t]he smart meter [*remote*] communicates with the access point [*hub*] using half-duplex radio frequency communications. In half-duplex communications, a smart meter [*remote*] powers down the receiver circuitry of the radio transceiver during the *interval of the communication cycle* in which it is transmitting the read and power status check request messages [*frames*]." ECF Docket No. 25-2 at 4-5.

Defendant now argues that "Atlas's claim chart only alleges that the receivers are powered off at one time, during transmission." ECF Docket No. 28-1 at 6. Again, referring to Figure 3 of the '734 patent, above, when one additional communicator is present, there is an outbound interval, when the hub is transmitting to the remote, and an inbound portion, when the remote is transmitting to the hub. There are no other intervals in the communication cycle. Thus, all that is required by claim 1 of the '734 patent is that the receivers be powered off during transmission. In other words, using Defendant's own characterization of Atlas's infringement

5

allegations, the "powering off" limitation of claim 1 is satisfied by the accused smart meters, as they turn off their receivers when transmitting.

In addition, Defendant argues that "Atlas is also silent as to what information the remotes allegedly use to power off their receivers." ECF Docket No. 28-1 at 6. As noted above, however, Atlas's Second Amended Complaint specifically alleges that the accused smart meters use "half-duplex radio frequency communications" by which the smart meters power down based upon when they receive "the read request and the power status check request messages," both of which are information <u>transmitted by the hub</u>. Indeed, as expressly stated in the claim chart, "[t]he read request and power status check request messages . . . contain information establishing the communication cycle, including the *interval* in which a read request or power status check request messages <u>is sent from the access point [*hub*] to the smart meter</u>." ECF Docket No. 25-2 at 4 (underline added for emphasis). Thus, Defendant again tries to read portions of the Second Amended Complaint in isolation – when read in whole, however, the Second Amended Complaint contains sufficient factual allegations directed to the "powering off" limitation to survive a motion to dismiss.

## III.    CONCLUSION

Atlas's Second Amended Complaint contains sufficient factual matter to state a claim to relief that is plausible on its face under the *Twombly* and *Iqbal* pleading standard. Accordingly, Defendant's motion should be denied.

Respectfully submitted,

*/s/ George C. Summerfield*
George C. Summerfield
STADHEIM & GREAR
400 North Michigan Avenue
Suite 2200
Chicago, Illinois 60611
(312) 755-4400

*Counsel for Plaintiff*
*Atlas IP, LLC*

Date: April 28, 2016

## CERTIFICATE OF SERVICE

I hereby certify that on April 28, 2016, a true and correct copy of the foregoing **PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT** was served on all counsel of record via the Court's CM/ECF system.

*/s/ George C. Summerfield*
George C. Summerfield
STADHEIM & GREAR LTD.

*Counsel for Plaintiff*
*Atlas IP, LLC*